UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-mj-099 (DJF)

STATE OF MINNESOTA    )
                      )   ss.  Bronson D. Day
COUNTY OF HENNEPIN    )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Bronson D. Day, being duly sworn, do hereby state as follows:

## INTRODUCTION & AGENT BACKGROUND

1.     I am employed by the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) and have been employed since March 2020. I graduated from the Criminal Investigator Training Program (CITP) on November 18, 2020, and Homeland Security Investigations Special Agent Training (HSISAT) on February 27, 2021. Both were located at the Federal Law Enforcement Training Center (FLETC), located at Glynco, Georgia. During that time, I completed training in surveillance, search and arrest warrants, federal laws enforced by HSI, and federal criminal procedures. Prior to my tenure as a Special Agent, I was a United States Border Patrol agent for nine years where I attended and graduated the Border Patrol Academy at (FLETC) in Artesia, NM. In my professional experience, I have conducted multiple criminal investigations for federal violations including, but not limited to, narcotics

smuggling, sex trafficking, possession and production of child sexual abuse material, and assaults of federal officers.

2.     This affidavit is submitted for the limited purpose of establishing probable cause in support of issuing a complaint and arrest warrant for Davis REDMOND for violating Title 18, United States Code, Section 111(a).[1]

3.     This affidavit is based on my personal knowledge, as well as information I have learned from other law enforcement officers and the review of reports, written materials, and recordings at the writing of this affidavit. This affidavit does not include all the details I have learned regarding this investigation.   Rather, it only includes information believed to be sufficient to establish probable cause.[2]

## PROBABLE CAUSE

4.     On January 21, 2026, officers from the United States Department of Homeland Security, Customs and Border Protection, U.S. Border Patrol

---

[1] "[A]ssaulting a federal employee is a general-intent crime." *United States v. Gustus*, 926 F.3d 1037, 1040 (8th Cir. 2019).

[2] "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication" between officers. *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993); *see also United States v. Spratt*, 141 F.4th 931, 936 (8th Cir. 2025) (same). In such cases, whether the affiant's knowledge is "first-hand" is "irrelevant" to the probable-cause analysis. *Horne*, 4 F.3d at 585; *see also United States v. Dan Thanh Nguyen*, No. 06-cr-192, 2006 WL 3486993, *6-8 (D. Minn. Dec. 4, 2006) ("[T]he information in an Affidavit need not be based on the personal knowledge of the affiant.").

2

("U.S. BP"), were conducting targeted immigration enforcement in the Minneapolis, MN area. Border Patrol Agent (BPA) 1 was driving a black GMC Yukon, rented by the U.S. BP for official use. BPA 2 was a passenger. BPA 3 was driving a separate vehicle. BPA 1, BPA 2, and BPA 3 were assigned to a team conducting surveillance and targeted enforcement actions. Other BPAs, including BPA 4, were assigned to roving patrol as an auxiliary support group in the area. U.S. As part of HSI's investigation of this matter, HIS special agents interviewed BPA 1, BPA 3, and BPA 4.

5.     Around 11:00 a.m. to noon on January 21, 2026, several cars began closely following BPA 1 while he was conducting surveillance in the Minneapolis area. One of these was a gray sedan driven by REDMOND. According to BPA 1, REDMOND was driving aggressively, running stop signs and red lights to keep up with BPA 1. He was honking his car horn, too. I know from my training and experience, and the training and experience of other agents assigned to this investigation and  Operation Metro-Surge in Minnesota, that frequently individuals who disagree with the operations of Immigration and Customs Enforcement and Customs and Border Protection will attempt to counter-surveil Agents that they know or suspect are conducting immigration enforcement. These individuals will also frequently honk their car horns to alert others of the presence of law enforcement officers.

6.     More cars gathered behind BPA 1, and in total about a dozen were following him. Because of these vehicles, BPA 1 stopped his law enforcement operations. He tried to evade the vehicles following him for about one hour until only REDMOND and one other vehicle remained. During this time, REDMOND had continued to drive aggressively in violation of basic motor vehicle safety rules and traffic laws. BPA 1 also stated that, at times, REDMOND was following his vehicle so closely that BPA 1 could not see the hood of REDMOND's vehicle in the rearview mirror. BPA 1 eventually became concerned for his safety due to REDMOND's erratic driving and advised his team of this situation. BPA 3 and BPA 4 responded to assist BPA 1.

7.     BPA 4 saw REDMOND following BPA 1's black GMC Yukon closely, honking, and aggressively shifting between traffic lanes. Sometime between noon and 1:00 p.m., both BPA 3 and BPA 4 saw BPA 1 slow his vehicle down to negotiate a right-hand turn, around 2298 Folwell Avenue, Minneapolis, MN, with REDMOND still following behind. BPA 3 and BPA 4 watched REDMOND suddenly accelerate his car, colliding with the black GMC Yukon driven by BPA 1. Here is a photo of the vehicles taken on-scene after the collision:



8.    After the collision, BPA 1 and BPA 3 approached REDMOND's car. BPA 1 and BPA 3 saw members of the U.S. BP auxiliary support team, dressed in clearly marked police clothing including body armor, at REDMOND's window identifying themselves as police and commanding him to exit the vehicle. REDMOND refused. So the BPAs broke the window and removed him. They put him in handcuffs and took him to the Bishop Henry Whipple Federal Building ("the Whipple Building"). While being transported to the Whipple Building, REDMOND repeatedly kicked the back of BPA 3's seat until BPA 3 ordered him to stop. After arriving at the Whipple Building, BPA 3 discovered that REDMOND's kicking had broken a piece of the seat.

9.    At the Whipple Building, REDMOND was advised of his Miranda rights and declined to speak to investigators.

## CONCLUSION

10.    Based on the information set forth above, there is probable cause to believe that the Defendant, Davis REDMOND, forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with a federal law enforcement officer in performance of official duties all in violation of Title 18, United States Code, Section 111(a).

Bronson D. Day
Special Agent
Homeland Security

SUBSCRIBED and SWORN before me
by reliable electronic means via FaceTime
and email pursuant to Fed. R. Crim. P. 41(d)(3) on
January 29, 2026

DULCE J. FOSTER
United States Magistrate Judge
District of Minnesota

7